IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | Case No. 07-00592 |
| RESTAURANT DEVELOPMENT ) | |
| GROUP, INC. ) | Hon. Susan Pierson Sonderby |
| ) | |
| Debtor. ) | |

## NOTICE OF MOTION

TO:   The Persons on the Attached Service List

PLEASE TAKE NOTICE that on Wednesday, July 11, 2007 at 10:00 a.m., or as soon thereafter as counsel may be heard, we will appear before the Honorable Susan Pierson Sonderby in Courtroom 642 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois or such other judge as may be sitting in her place and stead and shall then and there present **Trustee's Motion to Compel Compliance With The Court's Order of June 19, 2007 And Renewed Motion Compel Restaurants-America Consulting Group, Inc. To Produce Documents And For Sanctions.**

## CERTIFICATE OF SERVICE

I, Daniel Lynch, an attorney, certify that I caused copies of the foregoing **Notice and Motion to Compel** to be filed via the Court's CM/ECF system and served on the persons on the attached service list in the manner indicated therein on this 9th day of July, 2007.

/s/ Daniel Lynch<br>
Daniel Lynch

Jonathan M. Cyrluk (ARDC #6210250)
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
Tel.:   312-338-0200

Daniel Lynch (ARDC #6202499)
Henry Baskerville (ARDC #6285712)
LAW OFFICES OF DANIEL LYNCH
150 S. Wacker, Suite 2600
Chicago, IL 60606
Tel.:   312-442-9480

## SERVICE LIST

Each of the following was served via hand delivery (except as indicated) and by the cm/ecf or other means where available (as indicated).

| | |
|---|---|
| Jeffrey C. Dan<br>Crane, Heyman, Simon,<br>Welch & Clar<br>135 S. LaSalle St.<br>Suite 3705<br>Chicago, IL 60603<br><br>via cm/ecf | Deanna Kenney<br>Legal Services<br>Harris Trust & Savings Bank<br>111 W. Monroe St.<br>Chicago, IL 60603 |
| Janice L. Duban<br>DLA Piper US LLP<br>203 N. LaSalle St.<br>Suite 1900<br>Chicago, IL 60601<br><br>via cm/ecf | Travis D. Rojakovick<br>Lord, Bissell and Brook<br>111 S. Wacker Dr.<br>44th Floor<br>Chicago, IL 60606-4410<br><br>via cm/ecf |
| David A. Shapiro<br>Clive D. Kamins<br>Bronson & Kahn, LLC<br>150 N. Wacker, Suite 1400<br>Chicago, IL 60606<br><br>via cm/ecf | U.S. Trustee's Office<br>William T. Neary<br>227 W. Monroe St.<br>Suite 3350<br>Chicago, IL 60606 |
| William S. Hackney<br>Much Shelist<br>191 N. Wacker, Suite 1800<br>Chicago, IL 60606<br><br>via cm/ecf | Brian L. Shaw<br>Shaw, Gussis, Fishman, Glantz<br>Wolfson & Towbin, LLC<br>321 N. Clark St.<br>Suite 800<br>Chicago, IL 60610<br><br>via cm/ecf |
| Thomas J. Leanse<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East<br>Suite 2600<br>Los Angeles, CA 90067-3012<br><br>via facsimile and cm/ecf - Not personally served | J. Matthew Goodin<br>Lord Bissell and Brook, LLP<br>111 S. Wacker Dr.<br>Chicago, IL 60606<br><br>via cm/ecf |

| Jeffery Bunn<br>Much Shelist<br>191 N. Wacker, Suite 1800<br>Chicago, IL 60606 | Gus Paloian<br>William J. Factor<br>Sara E. Lorber<br>Charles S. Riecke<br>Seyfarth Shaw, LLP<br>131 S. Dearborn, Suite 2400<br>Chicago, IL 60603<br><br>via cm/ecf |
|---|---|
|  |  |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 07-00592 |
| ) | |
| RESTAURANT DEVELOPMENT ) | |
| GROUP, INC. ) | Hon. Susan Pierson Sonderby |
| ) | |
| Debtor. ) | |

**TRUSTEE'S MOTION TO COMPEL COMPLIANCE
WITH THE COURT'S ORDER OF JUNE 19, 2007 AND
RENEWED MOTION TO COMPEL RESTAURANTS-AMERICA
TO PRODUCE DOCUMENTS AND FOR SANCTIONS**

Gus A. Paloian (the "Trustee"), not individually, but solely as Chapter 7 Trustee of Restaurant Development Group, Inc. (the "Debtor") respectfully requests the Court enter an order: (i) enforcing the Court's order of June 19, 2007; (ii) compelling Restaurants-America Consulting Group, Inc. ("Restaurants-America") to produce documents responsive to a Rule 2004 Subpoena served on February 21, 2007 (the "Subpoena"); and (iii) imposing sanctions against Restaurants-America and its counsel for vexatiously increasing the costs of this proceeding.[1] In support of this motion, the Trustee respectfully states as follows:

## INTRODUCTION

1.  Restaurants-America has attempted to delay the Trustee's investigation for almost five months. The Trustee, however, believed that Restaurants-America's dilatory efforts had ceased when, four months after the Subpoena was served on Restaurants-America, almost two months after the Court *denied* Restaurants-America's motion to quash the Subpoena, and one week after the Trustee first filed a Motion to Compel Restaurants-America to produce documents responsive to the Subpoena, Restaurants-America finally agreed to drop its untimely and meritless objections to the Subpoena and produce all responsive documents on or before July 9, 2007. Indeed, the Trustee was comforted by the Court's June 19-Order memorializing Restaurants-America's agreement:

---

[1] Restaurants-America Consulting Group, Inc. originally was served as Restaurants America, Inc.

> **Restaurants-America Consulting Group, Inc. agrees to withdraw its objections to the Rule 2004 Subpoena and produce all responsive documents on or before July 9, 2007.** The Trustee withdraws his motion without prejudice.

*See* Ex. 1 (emphasis added).

2.  Notwithstanding the Court's order – and Restaurants-America's agreement – on Saturday, July 7, 2007, a mere two days before Restaurants-America was to produce all responsive documents, Restaurants-America and its counsel renewed their delay tactics and advised that Restaurants-America would not comply with the Court's Order of June 19 and was once again asserting the same frivolous objections to the Subpoena that it belatedly asserted in the first instance and which it represented to the Court it had withdrawn. Counsel offered no explanation or justification for Restaurants-America's improper conduct. The Court should order Restaurants-America to produce all responsive documents immediately. In addition, to punish and deter Restaurants-America's disregard for the Court's authority and vexatious litigation tactics, the Court should impose sanctions against Restaurants-America and its counsel in an amount no less than the costs and fees incurred in continuously litigating the issues concerning the Subpoena.

## FACTUAL BACKGROUND

3.  The Debtor is a company controlled by Roger Greenfield and Ted Kasemir that managed a number of restaurants controlled by Greenfield and Kasemir (the "restaurants"). In addition, the Debtor guaranteed the lease obligations of several of the restaurants. By Summer 2003, several of Greenfield and Kasemir's restaurants had failed or were failing and landlords had sought payment on the Debtor's guarantees. At least two lawsuits had been filed against the Debtor seeking payment on the guarantees.

4.  In the face of these liabilities, Greenfield, Kasemir and RDG's chief financial officer and outside attorneys and accountants hatched a scheme to make the Debtor "bullet proof" from the landlord's claims by causing the profitable restaurants to cancel the management contracts with RDG, divesting RDG of all of its other assets, including trademarks, office

furniture and accounts receivables, and creating a new company, RDG Chicago, Inc. ("RDG Chicago"). RDG Chicago then entered into management agreements with Greenfield and Kasemir's restaurants and received RDG's other assets (except for the trademarks, which were transferred to another new entity, RDG Chicago Trademark Co.). In sum, RDG Chicago carried on the same business as had RDG from the exact same location with the same employees. The transactions that led to denuding of RDG and the creation of RDG Chicago are referred to herein as the "2003 Restructuring."

5.  The 2003 Restructuring was outlined in at least two memos sent to Greenfield and Kasemir. The first memo was sent on July 22, 2003 from the Debtor's attorney, Harold Dembo. In Dembo's memo, he suggests to Greenfield and Kasemir that the "profitable companies" terminate their management contracts with RDG, but not the "unprofitable companies." Dembo further proposed:

> We should review the financial statements for RDG and determine what other assets and liabilities are inside the company. It may only have oral management contracts. Upon completion of the restructuring process, RDG would only be left with oral management contracts with the unprofitable companies and its guaranty liabilities.

*Id.* at 2. Dembo also recommends transferring "the trademarks . . . to a separate holding company." *See* Ex. 2, p. 1.

6.  The second memo was sent to Greenfield and Kasemir on August 11, 2003 by the Debtor's then CFO, Lee Zaben. Dembo was copied on the memo. Following up on the Dembo memo from two weeks before, Zaben's memo continues to put shape to the plan suggested originally by Dembo to divest the Debtor of its assets to avoid the obligations under the guarantees. A true and correct copy of the August 11, 2003-memo is attached as Ex. 3 hereto. Specifically, the August 11-memo states:

> As a result of the Rookery litigation and other lease/litigation issues facing RDG [*i.e.*, the Debtor], I believe this is the perfect time to restructure the Company in an attempt to make the Company as attractive as possible to equity sources and as **bullet proof as possible from potential creditors.**

3

Exhibit 3, p. 1 (emphasis added). To accomplish these goals, Zaben suggested new companies be formed to hold and manage the restaurants formerly managed by the Debtor. With respect to the Debtor, the memo suggested they:

> Take Restaurant Development Group, Inc. and satisfy all existing payables and distribute the assets to Roger [Greenfield] and Ted [Kasemir] for them to contribute to RDG Management, Inc. **Ideally, nothing would be left in the Restaurant Development Group [*i.e.*, the Debtor] and it would exist as a shell corporation.**

*Id.* (emphasis added). By doing so, the memo professed that the Debtor's guarantees "will essentially become **worthless,** as they will leave this company as a shell." *Id.* at 2 (emphasis added).

7. On December 28, 2003, RDG had more than $6 million in receivables and identified fixed assets of approximately $500,000. *See* Ex. 4. However, after the "2003 Restructuring" those assets disappeared from RDG.[2]

8. At the end of 2003, $4.3 million was transferred from RDG or its related entities to Greenfield and Kasemir. *See* Ex. 5. In addition, Greenfield received more than $2 million

---

[2] In its Response brief filed in response to the Trustee's original motion to compel, Restaurants-America makes the unsupported assertion that:

> simultaneous with the scrutinized transfer of assets from the Debtor to a successor entity known as RDG Chicago, the Debtor was also relieved of a substantial amount of debt, in excess of $4,000,000.

Docket No. 62, ¶ 19. The Trustee has not discovered credible evidence to support this assertion. Therefore, to discover precisely what consideration RDG received for the wholesale transfer of its assets, the Trustee served a Rule 2004 subpoena seeking testimony of a person with such knowledge. Notwithstanding counsel to Restaurants-America's previous representations to the Court, they now contend that there is *nobody* within Greenfield and Kasemir's organization with such knowledge, including Greenfield and Kasemir:

> there is currently no person at RDG Chicago, Inc. who has knowledge or custody or control of documents responsive to the items in your subpoena [*i.e.*, among other things, the consideration given by RDG Chicago to the Debtor for the transfer of the Debtor's assets].

*See* Ex. 16.

4

from related entities, including RDG Chicago, in 2004. *See* Group Ex. 6. Despite these massive payments, the Debtor scheduled Greenfield and Kasemir as unsecured creditors, claiming that each is owed $667,839.92.

9. Beginning in 2004, certain of the landlords learned of the 2003 Restructuring and filed suit against RDG Chicago and RDG Chicago Trademark based on theories of fraudulent transfers and successor liability. To once again frustrate RDG's creditors, upon information and belief, Greenfield and Kasemir – with the assistance of their outside professionals – caused their restaurants to cancel their management agreements with RDG Chicago. Although the RDG Chicago management agreements had a three-year term, it does not appear that any consideration was paid by the individual restaurant stores to relieve them of the obligations owed RDG Chicago under the contracts. Thereafter, it appears that RDG's business functions (which during 2004 were performed by RDG Chicago) continued to be performed, but the employees performing those functions all started drawing paychecks not from any central entity, but instead from the individual restaurant entities or other entities controlled by Greenfield and Kasemir. (*See* Ex. 17, Excerpts from Rodd Goldman Deposition at pp. 70-74.) Thus, RDG Chicago, like its predecessor RDG, transferred RDG's assets to other entities owned or controlled by Greenfield and Kasemir. These transactions are referred to herein as the "2004 Restructuring."

10. One of Greenfield and Kasemir's entities is Restaurants-America. Upon information and belief, Restaurants-America now performs functions that were performed by RDG and then its successor, RDG Chicago. Indeed, the website advertising each of Greenfield and Kasemir's restaurants is www.restaurants-america.com and uses the same logo as did RDG and RDG Chicago. *See* Ex. 7. Restaurants-America operates out of the same location as did RDG and RDG Chicago. Employees of entities owned by Greenfield and Kasemir carry business cards indicating that they work for Restaurants-America. *See, e.g.*, Ex. 8.

## PROCEDURAL HISTORY

### The 2004 Examination Subpoenas

11. RDG filed for bankruptcy protection on January 12, 2007.

12. On February 5, 2007, Crescent HC Investors, LP ("Crescent") filed a motion to issue Rule 2004 examinations subpoenas to RDG Chicago, Inc., Restaurants-America, Red Star America, Inc., Cash Management, Inc., Lee Zaben, Harris Bank and Greenfield and Kasemir. Crescent provided nine days notice of the motion to each proposed subpoena-recipient. Although the precise scope of the subpoenas was disclosed – Crescent attached full copies of the subpoenas to be issued to its motion – none of the proposed respondents objected to the motion. The Court granted Crescent's motion on February 14, 2007.

13. On February 21, 2007, Restaurants-America was served with a Rule 2004 Subpoena. The return date for the subpoena was March 7, 2007.

14. During the two weeks from February 21 through March 5, 2007, Restaurants-America did not seek to have a discovery conference concerning the scope of the subpoena. Instead, two days before the return date, Restaurants-America, along with Greenfield, Kasemir and their related entities, filed a motion to quash the subpoenas issued to them. The motion to quash was predicated on their argument that the subpoenas were overly broad and beyond the scope of a Rule 2004 examination. Ex. 9. After the motion was fully briefed and after hearing oral argument, the Court denied Restaurant-America's motion to quash. Ex. 10.

## Restaurants-America Refuses to Produce Any Documents

15. Notwithstanding the Court's denial of Restaurants-America's motion to quash, it still refused to produce documents. Instead, on May 2, 2007 – more than three weeks after the Court denied their motion to quash, Greenfield, Kasemir and Restaurants-America served (but did not file) a "Motion for Enlargement of Time," attaching objections to the subpoenas.[3] *See* Ex.11.

16. After Restaurant-America's objections, counsel to the Trustee attempted to resolve the disputes. Restaurants-America stood by its objections, and refused to produce any documents. *See* Group Ex.13.

---

[3] Restaurants-America provided objections to its subpoena on May 7, 2007. *See* Ex. 12.

6

### The Trustee's Motion to Compel and the Order of June 19, 2007

17. Stymied in its efforts to obtain compliance with the subpoena, the Trustee filed a Motion to Compel on June 12, 2007. On June 19, 2007, in the sixth-floor hallway just prior to the hearing on the Motion to Compel, Restaurants-America – which was represented by three lawyers – agreed to withdraw its objections to the Subpoena and produce *all* responsive documents by July 9, 2007.[4] In light of the withdrawal fo the objection, the Trustee agreed to withdraw the motion to compel without prejudice. The parties appeared before Judge Cox, who was hearing all matters for the Court, and presented their agreement. Judge Cox entered the following order:

> **Restaurants-America Consulting Group, Inc. agrees to withdraw its objections to the Rule 2004 Subpoena and produce all responsive documents on or before July 9, 2007.** The Trustee withdraws his motion without prejudice.

*See* Ex. 1 (emphasis added).

### The Respondents Promise Compliance and Then Renege

18. Following the June 19- hearing on the Motion to Compel, the Trustee's counsel made several inquiries as to when the promised production would begin. On July 3, 2007, in response to those inquiries, respondents' counsel transmitted an email that stated that the production would begin no later than July 6, 2007. *See* Ex.14. Despite these assurances, no documents were produced or proffered on July 6, and in an email exchange and follow-up phone conference on Saturday, July 7, 2007, respondents' counsel stated for the first time that no additional documents would be produced. *See* Ex. 15.

---

[4] At the June 19 Hearing, Restaurants-America was represented by outside counsel, Jeffrey Bunn and Jeffrey Dan, and in-house counsel, Rachel Dennis. All three attorneys participated in the conference that led to Restaurants-America's agreement to withdraw its objections and produce all responsive documents by July 9, 2007.

7

## ARGUMENT

### The Objections of Restaurants-America are Without Merit

19. Leaving aside for the moment the foregoing procedural history of this discovery dispute, at the threshold, the objection served by Restaurants-America to the Subpoena is makeweight. Restaurants-America's objections set up a straw man argument, attempting to limit both the scope of the Trustee's investigation and the time frame of relevant documents, claiming:

> documents requested from any entity for a period of time after December 31, 2004 cannot possibly be relevant to the efforts of the Trustee to discover potential fraudulent conveyances that might be relevant to the administration of the Debtor's estate.

Ex.12, ¶ 5. Restaurants-America asserts that because it was not incorporated until July 2005 that it could not have any relevant documents. *Id.*[5] In other words, Restaurants-America claims that the subpoena is overly broad. This is precisely the same argument that Restaurants-America made in its motion to quash when it claimed that the subpoena was beyond the scope of Rule 2004. The Court rejected that argument and now should reject it yet again.

20. As the Court is aware, the scope of Rule 2004 is extremely broad. As Judge Katz noted several years ago:

> The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. Where there is a showing that the purposes of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed.

*In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996). In contrast to the discovery rules applicable to ordinary civil cases, a Rule 2004 examination "can be legitimately in the nature of a 'fishing expedition.'" *In re Wilcher*, 56 B.R. 428, 433

---

[5] The incorporation date of Restaurants-America is irrelevant. It is apparent that Restaurants-America – through its shareholders and directors Greenfield and Kasemir – has custody and/or control of the responsive, post-2004 documents. Indeed, Rodd Goldman – whose business card identifies as the Controller of Restaurants-America (Ex. 8) – testified that there are approximately 200 boxes of documents at the offices at 1840 Pickwick, Glenview, Illinois. Ex. 17, Excerpts from Goldman Deposition. p. 75, l. 17-p.76, l. 23.) 1840 Pickwick is the address listed by the Illinois Secretary of State as the headquarters of Restaurants-America, and all other Greenfield and Kasemir restaurant entities. *E.g.* Ex. 18.

8

(Bankr. N.D. Ill. 1985) (*citing In re Vantage Petroleoum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)); *see also In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").

21.    Even absent the wide latitude granted under Rule 2004, the breadth of the Subpoena is well within the scope of the Trustee's investigation. Notwithstanding Restaurants-America's self-serving arguments, the Trustee's investigation is not limited solely to fraudulent conveyances. Among other things, the Trustee is investigating potential successor liability and alter ego claims, and is seeking to follow the trail of assets transferred from RDG and then to Greenfield and Kasemir and their corporate affiliates. The documents sought from Restaurants-America are related directly to that investigation. In short, Restaurants-America's objections to the Subpoena do not pass the red face test. A company that operates out of the same location as the Debtor, provides the same services to the restaurants as the Debtor, uses the same logo as the Debtor, has the same ownership as the Debtor and on its face appears to be a successor to the Debtor cannot seriously claim that Rule 2004 does not allow the Trustee to seek documents from Restaurants-America in connection with his investigation of, among other things, alter ego, successor liability and fraudulent transfer claims.[6]

## Restaurants-America Has Waived Any Objections

22.    Obviously, Restaurants-America waived its objections on June 19 when it *agreed* to produce all responsive documents and expressly withdrew its objections to the Subpoena. But, even prior to the Court's order of June 19, Restaurants-America waived its right to object to the scope of the subpoena. First, it failed to object when Crescent filed a motion to issue the

---

[6] Even under Restaurants-America's narrow view of the Trustee's investigation, the documents sought still are relevant. The Trustee is attempting to discover what happened to the Debtor's approximately $6 million in receivables and the approximately $500,000 in fixed assets. Given the nature of Restaurants-America's business there is more than sufficient reason to believe it has documents relevant to even that limited inquiry.

9

Subpoena. Second, Restaurants-America filed a motion to quash the Subpoena. Third, Restaurants-America's third bite at the proverbial apple (*i.e.*, its objections served on May 7, 2007) was not timely taken. Restaurants-America acknowledges that it had to produce documents by *April 25, 2007*, it did not serve its objections until May 7, 2007 and failed to seek permission from the Court to serve an untimely response. Simply, having failed to timely serve objections, Restaurants-America has waived any objections. *In re Corso*, 328 B.R. 375, 383-85 (Bankr. E.D.N.Y. 2005) (third-party waived objections to subpoena by not timely responding). Not satisfied by the ten weeks its shenanigans have bought it, however, Restaurants-America seeks yet more delay by refusing to honor the agreement and subsequent Court Order of June 19, 2007. This Court should not countenance such behavior and should enforce the June 19-Order and compel the immediate production of the requested documents.

### The Court Should Impose Sanctions Against Restaurants-America and Its Counsel

23. Pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, the Court should impose sanctions against Restaurants-America and its counsel because, among other reasons, they have needlessly and vexatiously increased the costs of these proceedings.[7] This is the fourth time this discovery has been brought before this Court. When Crescent first appeared before the Court on February 14, 2007 and obtained leave to serve the Rule 2004 subpoenas, Restaurants-America did not bother to assert any objections to the subpoenas, nor should such objections have been asserted given the well-established breadth of Rule 2004. When the

---

[7] 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The purpose of Section 1927 is to prevent "unjustified tactics in litigation" and "ensure those who create costs also bear them." *In re TCI Ltd*, 769 F.2d 441, 446 (7th Cir. 1985) (Easterbrook, J.). Unlike Rule 11, which focuses on the legitimacy of a particular filing, Section 1927 punishes attorneys who needlessly prolong litigation. *Samuels v Wilder*, 906 F.3d 272, 275 (7th Cir. 1990) (Easterbrook, J.).

Trustee next appeared before the Court on March 7 and April 10, 2007, and Restaurants-America failed to convince the Court to narrow the scope of the Subpoena in its unsuccessful Motion to Quash, Restaurants-America should simply have complied. When the Trustee appeared before the Court on June 19, 2007 on its Motion to Compel and Restaurants-America agreed to produce the documents, Restaurants-America should have honored its agreement. The Trustee should not be forced to make repeated trips to Court on the same issues. The Court should not countenance: (1) respondent's delay of the Trustee's investigation concerning assets of the estate; (2) the unnecessary expenditure of the time and effort of Trustee's counsel; and (3) the waste of the Court's time by forcing it to make the same rulings time and again.

24.    Furthermore, entering sanctions against Restaurants-America and its counsel conduct will discourage further abuse. The Court routinely encourages the parties to work out discovery disputes. If there are no ramifications for a party's failure to honor agreements it reaches, then the entire system fails and there is no reason for a discovery proponent to ever attempt to resolve disputes prior to seeking court intervention. Simply stated, there must be some punishment of Restaurants-America and its counsel to deter them from reneging on agreements that are expressly memorialized in orders of the Court. To compensate the Trustee and his counsel and to deter future unseemly conduct, the Court should order Restaurants-America to pay the Trustee's counsel its costs and fees incurred in bringing this motion, the costs and fees incurred in bringing the Motion to Compel that preceded the June 19-Court Order, and all costs and fees of appearing in Court relating to both motions. *In re McCaulley*, 218 B.R. 866 (Bankr. N.D. Ohio 1998).

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that this Court enter an order: (i) compelling the immediate production of the documents requested from Restaurants-America; (ii) expressly overruling Restaurants-America's objections to the subpoena; and (iii) awarding the Trustee the costs and fees identified above.

Dated: July 9, 2007

Respectfully submitted,

GUS A. PALOIAN, not individually, but solely as Chapter 7 Trustee

By: _____
One of its Attorneys

Jonathan M. Cyrluk (ARDC# 6210250)
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
Tel.:   312-338-0200
Fax:   312-338-0070

Daniel Lynch (ARDC# 6202499)
Henry Baskerville (ARDC# 6285712)
LAW OFFICES OF DANIEL LYNCH
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Tel.:   312-442-9480
Fax:   312-346-5180

12