UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| RESTAURANT DEVELOPMENT GROUP, INC., ) | Chapter 7 |
| Debtor. ) | Bankruptcy No. 07 B 00592 |
| ) | |

MEMORANDUM OPINION ON
TRUSTEE'S MOTION TO PAY SPECIAL COUNSEL

On January 12, 2007, Debtor Restaurant Development Group, Inc. ("RDG" or "Debtor"), an Illinois corporation, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Gus A. Paloian (the "Trustee") was appointed the duly authorized chapter 7 trustee of the Debtor's bankruptcy estate (the "Estate"). The Trustee sought permission from the Bankruptcy Court to retain Lynch & Stern, and Stetler & Duffy ("Special Counsel") as co-special counsel on a contingency fee basis. On April 9, 2007, an Order was entered approving the retention of Special Counsel. An Order authorizing the expanded retention of Special Counsel was entered on February 6, 2008. Those Counsel were retained pursuant to an Illinois Contingency Fee Contract which provided for payment of fees equal to thirty-five percent (35%) of any funds recovered by the Estate as a result of their efforts.

The Trustee has filed two motions to pay fees and expenses to Special Counsel, to which objections have been raised. Those motions arise out of the Trustee's recoveries in two proceedings.

The Trustee filed one related Adversary proceeding, 07-A-00937, against Roger D. Greenfield ("Greenfield"), Theodore Kasemir ("Kasemir"), Lee Zaben ("Zaben"), Restaurant Marketing, Inc. ("RMI"), and certain other corporate entities, including individual restaurant

entities owned and controlled by Greenfield and Kasemir, as well as RDG's former attorneys (collectively, the "Defendants"). That Adversary alleged that the Defendants conceived of and affected a number of transactions in order to reorganize Debtor's business and defraud its creditors. The first Motion to Pay Special Counsel arises out of a settlement with Zaben whereby he agreed to pay $50,000 to the Estate and cooperate in the prosecution of the Adversary against the remaining Defendants. In addition, the first Motion seeks payment of all expenses to date incurred in all their work, $66,341.80 in total.[1]

The Trustee filed another Adversary proceeding, 08-A-00137, against Debtor's accountants Jack Gages and Schneider, Cupuro & Associates, Ltd. That Adversary was subsequently settled for $100,000, and an Order approving said settlement was entered on July 23, 2008. Special Counsel filed, on notice, a second Motion to Pay Special Counsel seeking to recover its contingency fee relating to this $100,000. Counsel does not specifically seek reimbursement of any expenses in connection with this second Motion, but he continues to argue that 100% of his asserted expenses should be allowed under the first Motion.

Trustee has also pursued other parties in litigation not yet completed and where no recovery has yet been achieved. The large expenses sought to be paid now may pertain in part to those other cases.

Greenfield and Kasemir objected to the first Motion to Pay Special Counsel on the grounds that it fails to comply with 11 U.S.C. §§ 330, 331, and applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules of Bankruptcy Procedure (the

---

[1] In their original Motion, Special Counsel requested $69,604.79 in expenses. In response to the Court's request for additional documentation supporting the necessity and reasonableness of the requested expenses, Special Counsel filed a supplement in which they disclose that their original request inadvertently contained several duplicate requests for expenses.

"Local Rules") concerning compensation of attorneys. Specifically, they object that the Motion does not provide the required specificity to determine whether the requested fees and expenses are necessary and reasonable. Finally, they argue that any compensation should be allowed on an interim basis pursuant to § 331.

For the following reasons, the Motions have been granted as to requested fees. An Interim Order allowing Special Counsel's request for attorney fees in the amount of $17,500 was previously entered on July 31, 2008. A separate Order allowing Special Counsel's request for attorneys fees in the amount of $35,000 in connection with the Gages settlement was also entered, on September 4th.

The July 31, 2008, Order previously entered also required Special Counsel to supplement their application by breaking down expenses to show how they related to specific tasks performed. Counsel failed to comply with that Order, and their request for expenses is deferred subject to further showing that the requested expenses were not only necessary and reasonable but also that they pertain to recoveries of the $50,000 Zaben settlement on the $100,000 Gages settlement or both.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This issue constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

### *Special Counsel has Complied with the Procedural Requirements for Requesting Their Fees*

Greenfield and Kasemir argued that Special Counsel's entire request for fees should be denied for failure to comply with the procedures for requesting compensation set forth in 11 U.S.C. §§ 330, 331, and the Bankruptcy Rules and Local Rules. Defendant's objection is essentially that Special Counsel has not established that their requested fees are reasonable and necessary.

According to § 330(a)(1)(A):

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections ... 328 ... the court may award to ... a professional person employed under section 327 ... reasonable compensation for actual, necessary services rendered by the ... attorney and by any paraprofessional person employed by any such person....

The starting point for determining whether requested fees are reasonable and necessary "is usually the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." Hensley v. Eckhart, 461 U.S. 424, 433 (1983). To assist judges in this Bankruptcy Court in evaluating large and complex fee applications, we have Local Bankruptcy Rule 5082-1, which governs Applications for Compensation and Reimbursement for Professional Services in Cases Under Chapter 7, 11 and 12. Rule 5082-1 requires much detailed information, but provides that "[t]he court may also excuse or modify any of the requirements of this Rule."

Greenfield and Kasemir argue that the Order authorizing the expanded retention of special counsel requires Counsel to comply with the §§ 330 and 331, and also all Local Bankruptcy Rules. However, what that Order said was different:

> [T]he compensation and reimbursement of Stetler and Lynch shall be subject to further order of the Court in accordance with the procedures and standards set forth in sections 330 and 331 of the Code, such Federal Rules of Bankruptcy Procedure as may be applicable from time to time, and such procedures as may be fixed by order of this Court.

Nowhere does the Order mention compliance with the Local Bankruptcy Rules. Rather, it requires that Special Counsel seek compensation in conformance with the notice and hearing requirements of § 330 and Rule 2002(a)(6) and (k) Fed. R. Bankr. P.

Section 330(a)(3) of the Bankruptcy Code provides a nonexclusive list of factors to be considered in determining the amount of reasonable compensation, including, "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3)(F). The Code specifically contemplates a contingent fee to be among "the customary compensation charged by comparably skilled practitioners...." See 11 U.S.C. § 328(a) ("The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title ... on any reasonable terms and conditions of employment, including ... on a contingent fee basis."). Thus, a contingent fee is a recognized basis upon which to award attorney fees in bankruptcy, and any agreement for a contingent fee should be considered in determining the reasonableness and necessity of a request under §330(a)(3)(F).

In many cases, Local Rule 5082-1 aids the court in monitoring attorney inputs, and striking a balance between promoting a competent bankruptcy bar and preventing a windfall to

attorneys at the expense of other creditors. The detailed statement of services required under that Rule establishes that the work was actually performed. In re Pettibone Corp., 74 B.R. 293, 301 (Bankr. N.D. Ill. 1987). The narrative summary establishes that the work was reasonable and necessary without requiring the court to comb through reams of billing statements. Id.

Contingent fees, on the other hand, spread the risk of litigation between attorney and client, and allow the client to proceed with litigation when funds are not immediately available to pay counsel. Kirchoff v. Flynn, 786 F.3d 320 at 324-25 (N.D. Ill. 1987). Contingent fee cases require less monitoring of details by the Judge because they align private incentives in determining attorney work. Id. at 325. This is the situation here. Prior to filing the settled Adversaries, the Debtor's bankruptcy estate was insolvent. Debtor could not hire counsel on an hourly basis, because it had no readily available funds to pay counsel. Therefore, the rationale behind Local Rule 5082-1 does not apply to contingent fee cases agreement agreed to and approved here, and compliance is excused in this case pursuant to Rule 5082-1(E).

However:

> Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a). Greenfield and Kasemir argue that the terms and conditions of the contingent fee agreement might prove improvident if the Trustee does not succeed on the majority of his claims — valued at $40 to $50 million against the remaining defendants — and that such determination cannot be made until the conclusion of all litigation.

A contingent fee is specifically contemplated for by 11 U.S.C. § 328(a). Therefore, the necessary and reasonable requirement of § 330(a) should not be read to invalidate agreements approved by the court under § 328(a). In re Benassi, 72 B.R. 44, 47 (D. Minn.1987). Developments "not capable of being anticipated" at the time of fixing such terms and conditions, might include that the representation "was inadequate, that the dispute ... was resolved at an unexpectedly early moment of the proceedings, that the results obtained were disappointing, or that the property escalated in value due to forces outside counsel's control." Id. at 48. See also In re Churchfield Mgmt. & Inv. Corp., 98 B.R. 893, 899 (Bankr. N.D. Ill. 1989). The majority of lawsuits are settled before trial and, therefore, settlement cannot be said to be incapable of being anticipated. Benassi, 72 B.R. at 50. As in Benassi, settlement here is not a basis for overriding the contingent fee agreement where the settlement was reached over a year after the agreement was approved and litigation had progressed to discovery. See id.

Special Counsel complied with § 330 by making their Motions on notice as required by Rule 2002(a)(6) and (k) Fed. R. Bankr. P. One factor to be considered in determining the reasonableness of a requested fee under § 330(a)(3)(F) is the customary compensation charged by comparably skilled attorneys. By virtue of the Code, this customary compensation might include a contingent fee. See 11 U.S.C. § 328(a). Here a contingent fee was a reasonable basis on which to compensate Special Counsel because, prior to the commencement of the Adversary, the Estate did not have other funds with which to compensate them. Finally, compliance with Local Rule 5082-1 is not necessary to monitor the reasonableness or necessity of fees earned on a contingent fee basis. Greenfield and Kasemir have not identified any unanticipated developments that would make the agreement improvident. Therefore, Defendants' objection to the Motion to Pay

Special Counsel is overruled, and Special Counsel's fees were allowed on the respective settlements in the amounts of $17,500 and $35,000. Those awards were made interim against the possibility that some basis can be shown under § 328(a) at the end of case to warrant any revisions.

### *Special Counsel Has not Established the Reasonableness and Necessity of Their Requested Expenses*

According to 11 U.S.C. § 330(a)(1)(B), "After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections ... 328 ... the court may award to ... a professional person employed under section 327 ... reimbursement for actual, necessary expenses...." Greenfield and Kasemir object that Special Counsel has not provided sufficient information to demonstrate that the requested expenses were actual and necessary.

According to the Contract:

> All amounts due counsel as a fee and for reimbursement of costs advanced shall be entitled to priority as an administrative expense of the Estate. Counsel and the Estate expressly agree and understand that <u>all fees and costs</u> that are due Counsel pursuant to this agreement <u>shall be payable solely from recoveries made on the Claims</u> and upon Court allowance and approval.

(Emphasis supplied).

Special Counsel concedes that reimbursement of expenses is subject to the recovery of assets for the Estate, but suggests that the terms of the Contingent Fee Contract (the "Contract") approved by the Court provides for the payment of "*all* fees and costs" regardless of whether they were reasonable and necessary. Second, they argue that because amounts sought to be reimbursed have been expended in efforts that might benefit remaining parts of the litigation, it is impossible

to apportion the requested expenses to the monies recovered as a result of the Zaben or Gages settlements. These arguments are without merit.

Initially, it should be pointed out that the Contract provision relied on by Special Counsel refers to "fees and *costs*." On the other hand, the provision heading refers to the "Payment of All Fees and *Expense* Reimbursement...," (emphasis added), and a separate provision defines Litigation Expenses. The terms "costs" and "expenses" are not usually interchangeable. "Costs" is a term of art, and recoverable costs are listed in 28 U.S.C. § 1920. "Courts may not award costs not authorized by statute." Canal Barge Co. v. Commonwealth Edison Co., 98-C-0509, 2003 WL 1908023, at *1 (N.D. Ill. Apr. 18, 2003). Expenses may include costs, but also include all other out-of-pocket expenditures attributable to an individual lawsuit (but not overhead). However, the Trustee has not objected to Special Counsel seeking expenses under the Contract, and reading the word in context, the use of the term "costs" is read to include expenses as encompassed by § 330(a)(1)(B).

Special Counsel's suggestion that they can recover their expenses regardless of whether or not they are necessary and reasonable is not supported by language of the Contract, which provides for payment of "all fees and costs that are due Counsel pursuant to this agreement..." That does not mean that Special Counsel is entitled to recover any and all of its expenses even if unreasonable or unnecessary. Rather, that sentence governs the source of funds to pay the amounts that counsel is entitled to, namely "solely from recoveries made on the Claims...." In addition, the Contract specifies that payment will be made "upon Court allowance and approval," which certainly requires analysis into necessity and reasonableness under § 330(a)(1)(B).

Therefore, Special Counsel's argument that their expenses do not have to be necessary and reasonable is without merit.

The Contract provided clearly that recovery of expenses shall "be payable solely from recoveries made on the Claims." That must mean that expenses reimbursed must have aided in such recoveries. However, Special Counsel argues that it is impossible to attribute the requested expenses to the efforts to obtain any particular settlement, because some of the expenditures will benefit all the various litigation efforts, both those settled and those which continue. But the contention that it is just not possible to breakdown the expenses by litigation task and recoveries is not persuasive.

It is likely that some requested expenses will not have to be duplicated and can be used in prosecution against the remaining defendants. For example, Special Counsel requests $1,076.30 in expenses for a court reporter at the deposition of Zaben. Information learned at the deposition may have affected the Trustee's decision to settle with Zaben as well as the terms of the settlement. That information will also likely be used in preparing for trial against the remaining defendants. Special Counsel is not required to estimate what portion of the $1,076.30 resulted in the Zaben settlement and what portion will benefit the rest of the litigation in order to recover a portion of that expense now and the balance at a later date. But what they can and must do is identify those actual and necessary expenses related to the Zaben or Gages settlements, and they can then recover those entire expenses now.

However, that does not mean that all litigation expenses relate to the Zaben and Gages settlements. There are a number of requests for expense reimbursement where the relationships to the Zaben and Gages settlements is far from clear. For example, one of the largest single

entries on Special Counsel's expense reimbursement request is $6,600 for "consulting in connection with legal malpractice expert." It is unclear on this record how that expenditure relates to either the Zaben or Gages settlement.

Without additional detail sufficient to demonstrate which requested expenses were necessary and reasonable to results achieved in recovery of the $50,000 Zaben or $100,000 Gages settlement, the requested expenses are therefore not yet compensable.

Finally, Greenfield and Kasemir also object that the law firm of Lynch & Stern LLP seeks reimbursement for duplication expenses at a rate of $0.15 per page. The original Contingency Fee Contract approved by the Court on April 9, 2007, called for photocopies to be made at a rate of $0.10 per page. The provision setting the cost of duplication was removed from the Contract approved by the Court on February 6, 2008. Daniel Lynch of Lynch & Stern explained that his firm shares an office suite with another law firm that owns the photocopier and charges Lynch & Stern $0.15 per page for duplicating. While the owner of the photocopier is making a small profit for Lynch & Stern's use of the copier, the $0.15 per appears to be the actual out-of-pocket expense for Special Counsel, and is not unreasonable.

## CONCLUSION

For the foregoing reasons, separate Orders have previously been entered on an interim basis allowing Special Counsel's requested attorney fees as a percentage of the $50,000 settlement with Lee Zaben and allowing the requested contingent fee on the $100,000 Gages settlement. Both are payable from the settlement proceeds.

However, pursuant to this Opinion, a separate Order will be entered deferring ruling on Special Counsel's request for expenses, giving them one more (and final) chance to comply with

the order that required them to relate requested expenses to either or both of the two recoveries as they must under their contingent fee agreement.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 5th day of September 2008.